## A. H. COFFIN v. E. G. DOUGLASS.

(Case No. 1971.)

1. ASSIGNMENT.— An assignment for the benefit of creditors, made under the act of March 24, 1874, which did not purport to pass title owned by the partnership making it, as well as the individual property not exempt from forced sale owned by the individuals composing the firm, cannot be sustained as a valid assignment.

2. SAME — CONSTRUED.— But when a mercantile firm in failing circumstances made an assignment, by the terms of which they conveyed to the assignee "all the wares, merchandise, stock in trade belonging to us, now in the store of Kniffin Bros. (their store), and all the warehouses used, owned and controlled by us, together with our books, accounts, notes, bills, including *all properties of all kinds now owned by us*, excepting only such properties as are exempt to us," it was construed to embrace the individual property as well as that owned by the firm.   It was also *held:*

   (1) That the surroundings of the parties may be looked to in ascertaining what they meant by the language used.

   (2) In the absence of language showing a contrary intent, the presumption will be indulged that the parties intended to make an assignment valid in law.

   (3) The instrument stipulated for the release of the separate debts of each partner as well as partnership debts, and this could not have been intended if the purpose was only to assign partnership assets.

3. CASES REVIEWED.— The cases of Von Wettberg v. Carson, 44 Conn., 289; Hanson v. Paige, 3 Gray, 242, and Malcolm v. Hodges, 8 Md., 418, reviewed, and other authorities found in the opinion cited.

APPEAL from Grayson. Tried below before the Hon. Richard Maltbie.

On the 6th of December, 1882, S. W. Kniffin, of Parsons, Kansas, and W. G. Kniffin, of Denison, Texas, who were partners under the firm name of Kniffin Bros., being insolvent, executed to A. H. Coffin their deed of assignment, whereby Coffin was appointed assignee. Coffin accepted the trust and filed his bond, which was approved and qualified. The assignee took possession of the goods assigned and had them in his possession when defendant Douglass by a writ of attachment, in a cause entitled Keating v. Kniffin Bros., seized the goods without the consent of the assignee, and converted the same to his own use. The goods at the time of their seizure were reasonably worth in the market the sum of about $1,273.26. This cause coming on to be heard without a jury, judgment was rendered in favor of defendant, from which plaintiff Coffin, the assignee, appealed. The character of the assignment is shown by the opinion.

*L. L. Maughs* and *Cowles & Story*, for appellant.

*Alex. White* and *Hare & Head*, for appellee, cited: Bump on Fraudulent Conveyances, 356; Hooper v. Tuckerman, 3 Sandf., 311; Sangston v. Gaither, 3 Md., 40; Keighler v. Nicholson, 4 Md. Ch., 84; Rosenburg v. Moon, 11 Md., 376; Banitz v. Rice, 14 Md.; Seaving v. Brinkerhoff, 5 Johns. Ch., 329; Scott v. Coleman, 3 Littell, 349; Wilkes v. Ferris, 5 Johns., 335; Weems v. Armstrong, 31 Md., 87; Bump on Fraudulent Conveyances, 429; Donoho v. Fish Bros., 58 Tex., 164; Thomas v. Jinks, 5 Rawle, 221; *In re* Wilson, 4 Barr, 430; Henderson v. Bliss, 8 Ind., 100.

STAYTON, ASSOCIATE JUSTICE.— The judge, who tried this cause without a jury, found that the deed of assignment conveyed to the appellee the property which belonged to S. W. and G. W. Kniffin as partners, and a judgment was rendered against the assignee on the ground that the deed did not convey the property which belonged to the two Kniffins otherwise than as partners. The deed of assignment contains a provision requiring releases from such creditors as take benefits under it.

In the case of Donoho v. Fish Bros. & Co., 58 Tex., 164, it was held that an assignment made by partners, which did not purport to pass title to all the property owned by the partnership, and by the members thereof in their separate rights, and not exempted from

forced sale, could not be sustained as a valid assignment under the act of March 24, 1879.

In that case the deed did not purport to convey to the assignee any other than the partnership property which belonged to the assignors; and it affirmatively appeared that one at least of the assigning partners had a considerable separate estate.

In that case it was said: "If the deed of assignment purported to convey all of the property which belonged to the persons composing the firm, however defective it might be in form, it would pass not only the property which each copartner might own in his individual right, but also such property as they might own as copartners; but a deed which purports to convey only such property as the makers thereof own as copartners, cannot be held to pass the title to any other without making for the makers of the deed a contract which they never intended; this the law does not undertake to do." The law aids an informal assignment, but does not make one.

It then becomes necessary to consider the legal effect of the deed through which the assignment was made. So much of the deed as is necessary for this purpose is as follows:

"This agreement, made and entered into this 6th day of December, 1882, between S. W. Kniffin, of Parsons, Kansas, and W. G. Kniffin, of Denison, Texas, composing the firm of Kniffin Bros., of Denison, said county and state, of the first part, and A. H. Coffin, of said county and state, as assignee, . . . witnesseth: that the said Kniffin Bros., for and in consideration of the sum of $5 to them in hand paid by the said second party, the receipt of which is hereby acknowledged, and in consideration of the covenants hereafter expressed, do hereby give, grant, assign and transfer unto the said A. H. Coffin and his assigns all their wares, merchandise, stock in trade belonging to us now in or about the store of Kniffin Bros., any and all of the warehouses used, owned or controlled by us in Denison, Texas, *including all properties of all kinds now owned by us*, together with our books, accounts, notes, bills, drafts and acceptances, excepting only such properties as are exempt to us by law, and held by us on commission, all subject to such terms as are by law effective, heretofore made and executed by us, to have and to hold to the said A. H. Coffin upon trust," etc.

The instrument stipulates for a release of the makers as a firm and as individuals by the consenting creditors, and is signed with the full names of both of the partners.

This instrument purports to be the act of each of the persons

who composed the firm of "Kniffin Bros.," and to convey all the property which they owned; but it is insisted that the fact that the partnership name is used in the instrument, in connection with the fact that the instrument purports to convey " wares, merchandise, *stock in* trade belonging *to us* now in and about the store of Kniffin Bros., and all the warehouses used, owned and controlled by *us*, together with *our* books, accounts, notes, bills, including all properties of all kinds now owned by *us*, excepting only such properties as are exempt *to us*," etc., necessarily restricts the deed to copartnership property.

Such a construction is an exceedingly technical and narrow one. If the instrument were ambiguous in its terms, and susceptible of two constructions, under well settled rules that construction should be placed upon it, if consistent with the language used, which will render it legal and operative, rather than one which will invalidate it. Burrill on Assignments, 456; Wharton *v.* Fisher, 2 S. & W., 178.

The surroundings of the parties may be looked to in such a case for the purpose of ascertaining what they really intended by the language used. The parties evidently desired to make an assignment under the statute for the benefit of their creditors, and they are presumed to have known that such an assignment as it is claimed was made by them would be invalid and wholly fail to accomplish the purpose which they desired.

The presumption, in the absence of language in the instrument showing a contrary intention, is that the assignors intended to make an assignment valid in law; and we are of the opinion that the language used in the deed, together with the mode of its execution, evidence the intention of each of the members of the firm to pass to the assignee by the deed all the property either of them owned in his separate right or as a partner.

The language used is as broad as it well could be, and, but for the fact that the firm name is used and a plural pronoun employed, without some express word indicating that it was intended to make the conveyance apply to property owned by the parties in their separate rights, no one could for a moment doubt, if no regard whatever was had for the purpose of the conveyance, that it was the intention of the makers to convey all the property they or either of them owned, separately or in common, except such as was exempt.

The exemption retained is "*to us*," which might be held to be a reservation only to the firm, with as much reason as it could be

held that none but firm assets were intended to pass by the deed; such a construction of the words used in this connection no one could contend for.

The instrument stipulates for release from separate debts of each partner, as well as from partnership debts. Could the parties have contemplated this, if they understood that the separate property of each did not pass by the deed?

A reference to cases decided by other courts, in the construction of similar instruments, will illustrate the correctness of the conclusion to which we come.

In the case of Von Wettberg v. Carson, 44 Conn., 289, the language of the assignment was, " that we, James Tehan and Thompson Stroud, partners under the name of James Tehan, do hereby give, grant, sell, convey, transfer and assign to E. Henry Hyde, Jr., trustee, etc., all *our* real and personal estate, debts, demands, claims and choses in action, of every kind whatsoever, and wheresoever the same may be situated, except what property is by law exempt from execution." The court said: " We think there can be no doubt that it was the intention of the parties to the instrument to convey not only the copartnership property, but their individual property also. This intention is manifest from the language used, 'all *our* real and personal estate, etc., of every kind whatsoever, and wheresoever the same may be situated.'

"In the case of Coggill v. Botsford, 29 Conn., 445, the language used in the deed of assignment was 'all *their* property, real and personal,' and Judge Sanford says that the words are certainly broad enough to include the separate property of each of the partners, as well as the common property of both of them. The language of the present deed is much broader and more explicit than in the case cited, and we entertain no doubt that the assignment of Tehan and Stroud conveyed all their copartnership and individual property."

In Hanson v. Paige, 3 Gray, 242, Hanson, in behalf of himself and several others, whom he stated to be merchants and copartners under the firm name of John W. Blodgett & Co., set forth that *they* were indebted in divers sums of money, amounting in the whole to not less than $200, which *they* were unable to pay in full. It was contended that the word *they* was to be referred to the company alone, and that it amounted only to an averment that the firm was insolvent; but the court said: " The word *they* is not to be thus restricted; no rule of construction requires or warrants it. The averment is not that the persons named are in their relation as partners

indebted. The allegation is more general and comprehensive. '*They* are indebted in divers sums of money which *they* are unable to pay in full;' that is, which *they*, in their individual or collective capacity, in all the capacities *they* have, are unable to pay in full. *They* are indebted in divers sums of money which *they* are unable from any source to pay. So the averment, that *they* wish to surrender all *their* property, extends to all *their* property, held in any capacity, which is by law applicable to such payment. 'For the benefit of *their* creditors,' means for the benefit of the creditors of all of them, and of each and every one of them."

In Malcolm *v.* Hodges, 8 Md., 418, by an instrument which recited that Thomas Sprigg and Henry Meseke were copartners, trading under the firm name of Sprigg & Meseke, they conveyed to a trustee, for the benefit of *their* creditors, "all *their* estate and effects, and all and singular the stock of goods, machinery, book accounts owing to said Sprigg & Meseke, and all and singular the estate and effects of the said Sprigg & Meseke, of whatsoever consisting, in trust," etc. The chancellor before whom the cause was tried below said: "It does convey all the estate and property of the grantors of any kind and description;" and on appeal the court said: "Upon consideration of the deed, we are of opinion, with the chancellor, that, if good in other respects, it would operate as a conveyance of all the grantors' property, joint and separate."

The following cases are to the same effect: Dana *v.* Lull, 17 Vt., 390; Wharton *v.* Fisher, 2 S. & R., 177; Williams *v.* Hadley, 21 Kan., 350; Boughton *v.* Crosby, 47 Conn., 577; Stiness *v.* Pierce, 13 R. I., 452; Judd *v.* Gibbs, 3 Gray, 541. Thus holding that the assignment passed all the property which either of the assignors owned, either separately or in common, the assignment was valid and the property not subject to seizure under an attachment sued out by a creditor of the makers, and a judgment in favor of the appellant should have been entered.

This view of the case renders it unnecessary to consider whether the court erred in excluding, at the time it was offered, the evidence offered to show that neither of the partners had any property whatever except such as they owned in common as partners; as does it become unimportant to inquire whether an assignment deed must on its face show that it conveys all of the assignor's property, or whether it may be shown by extrinsic evidence that there is no property owned by the assignor which does not pass by the deed. Upon this question the decisions of courts of recognized ability are in conflict.

The judgment in the court below having been rendered in favor of the defendants, the case is not so developed in the record as to enable us to dispose of it in such manner as to do justice between the defendant Douglass and the parties who were made defendants in the cause at his request. Although it does not clearly so appear, it is most probably true that the other defendants are in some way liable over to Douglass, the sheriff, by indemnity bond or otherwise, and for these reasons the judgment will be reversed and the cause remanded, rather than here rendered, that all matters between the defendants may be properly adjusted.

As the case was presented, the appellant was entitled to a judgment against the defendant Douglass for the value of the property seized by him.

The judgment of the court below is reversed and the cause remanded, to be proceeded with in that court in accordance with this opinion.

REVERSED AND REMANDED.

[Opinion delivered April 18, 1884.]